INHABITANTS OF ANDOVER *vs.* EBENEZER SUTTON & others.

The remedy for a town against a mill owner, who overflows a road which the town is by law obliged to repair, and does repair, is by an action on the case, and not by a complaint under the Rev. Sts. *c.* 116; and in such action the town is entitled to recover the expense incurred in repairing the road, with interest from the time of demanding payment from the mill owner, but is not entitled to recover the costs of an indictment against the town for not seasonably repairing the road.

A mill owner placed a dam across the outlet of a pond, and thereby caused the water to overflow a road near the bank of the pond: The town, that was obliged by law to repair the road, repaired it, and caused a bank wall to be built upon the shore of the pond, out of the line of the road, to stop the washing away of the bank, and to protect the road against the action of the water, which would otherwise have soon reached the boundary of the road: *Held*, in an action by the town against the mill owner to recover the expenses of repairing the road, that the expense of building the wall might be recovered of the defendant.

THIS was an action of trespass upon the case, to recover expenses paid by the plaintiffs in repairing a highway, and was submitted to the court upon the following statement agreed upon by the parties :

" The defendants are owners of mills situate upon Coche-chewick Brook, which flows from the Great Pond in Andover to Merrimack River. For the purpose of forming a reservoir of water for the use of their mills, the defendants, in 1837, erected, and have continued to this time, a dam across the meadows below the outlet of said pond, and thereby raised and kept up the water in the pond several feet above its natural height. The highway in question was located by

the shore of the pond. The water, so raised by the defendants' dam, flowed and washed said highway, and occasioned the defects and expenses which are the foundation of this action. The plaintiffs are bound to keep this highway in repair, and have been twice indicted and compelled to pay costs and make repairs for defects therein caused by the water raised by the defendants' dam. The plaintiffs gave notice to the defendants of said defects, and of the intention to repair, before the repairs were made, and also demanded payment of the expenses from the defendants, before this suit was brought; and the defendants refused payment. The expenses incurred by the plaintiffs, in making said repairs, were necessary and proper for them to incur. Part of the costs of repair was paid for building a bank wall upon the shore of the pond, out of the line of the location of the highway, to stop the washing away of the banks of the pond, and to protect the road against the action of the water. In those places where the wall was so built, the water was wearing away the banks of the pond, so that it would probably soon reach the boundary of the road, unless prevented. The plaintiffs claim to recover the following items of expense, which have been paid by them in this behalf, with interest from dates of payment: Cash paid Samuel F. Barker, $588·75. Expenses of committee, $47·50. Cost of indictments, $45·04. Total, $681·29. If the plaintiffs are entitled to recover in this action, judgment is to be rendered for them, as the court shall direct; and if the parties cannot agree upon the sum, the court may appoint an assessor to determine the same. If the plaintiffs are not entitled to recover any of said items, then judgment is to be rendered for the defendants."

*Hazen,* for the plaintiffs. The cases of *Commonwealth* v. *Stevens,* 10 Pick. 247, and *Commonwealth* v. *Fisher,* 6 Met. 433, show that the flowing of a road by mill owners is an unlawful and indictable act. And this action is well brought to recover the money which the plaintiffs have paid in consequence of the defendants' unlawful act. *Inhabitants of China* v. *Southwick,* 3 Fairf. 238. *Shaw* v. *Cummiskey,* 7 Pick

76.   *Inhabitants of Lowell* v. *Boston & Lowell Rail Road,* 23 Pick. 24.

The mill act (**Rev.** Sts. *c.* 116) applies only to owners of land, and does not reach this case.   The plaintiffs do not own the land that is flowed ; and if they had proceeded on that act, the defendants might have defended by showing that the plaintiffs had no estate or interest in the land.   *Inhabitants of Calais* v. *Dyer,* 7 Greenl. 155.

*J. P. Rogers,* for the defendants.   The plaintiffs cannot maintain this action ; their only remedy being under Rev. Sts. *c.* 116.   Before the passing of those statutes, none but the owner of land could have the remedy provided by *St.* 1795, *c.* 74.   But by Rev. Sts. *c.* 116, § 4, an enlargement of the claim is made ; probably for the purpose of providing for the cases which were held, in 7 Greenl. 155, and in *Johnson* v. *Kittredge,* 17 Mass. 76, not to be within the former statutes.

The decisions in 10 Pick. 247, and 6 Met. 433, that mill owners cannot levy a nuisance, do not remit injured parties to their common law rights.

HUBBARD, J.   The right to recover the money demanded in this case, or any part of it, is denied by the defendants, on the ground that if the plaintiffs have any remedy, it is by complaint under *c.* 116 of the Rev. Sts. for the erection and regulation of mills, and not by an action at common law. The first section of that chapter provides that "any person may erect and maintain a water mill, and a dam to raise water for working it, upon and across any stream that is not navigable, upon the terms and conditions, and subject to the regulations, hereinafter expressed."   The fourth section provides that "any person, whose land is overflowed or otherwise injured by such dam, may obtain compensation therefor, upon his complaint before the court of common pleas for the county where the land or any part of it lies, provided that no compensation shall be awarded for any damage sustained more than three years before the institution of the complaint." The thirtieth section provides that "no action shall be sustained at common law, for the recovery of damages for the

erecting, maintaining or using any mill or mill dam, except as is provided in this chapter ; " and the case provided for seems to be that stated in § 24, which authorizes an action of assumpsit or debt against the mill owner, for the annual compensation or gross damages awarded, and payment of which, by § 25, may be enforced by a sale of the premises. The *St.* of 1824, *c.* 153, § 3, had this provision : " When any jury shall be summoned under the said acts," (*Sts.* 1795, *c.* 74 ; 1797, *c.* 63 ; 1799, *c.* 78 ; 1814, *c.* 173, &c.) " to assess damages to any person, the jury may take into consideration, in their assessment, any other damage occasioned to such person, as well as the damage to the land overflowed, and in offset thereto (if any there be) any benefit which may result to the complainant by reason of the mill dam complained of."

The laws providing for the erection and support of mills have ever been a subject of interest in Massachusetts. Originally, when the inhabitants were few, and their means of erecting expensive works were small, the erection of a mill was a great public benefit; and those who were willing to incur the expense were considered as public benefactors Those who undertook the erection of a mill were permitted to select a site and flow the lands necessary for that purpose. Afterwards, provision was made to compensate the owners of the adjoining lands for the injury sustained by the flowing of the meadows ; and from time to time, with the increasing population and growing business of the Commonwealth, additional statutes have been passed, to secure the right of flowing, for the erection and maintenance of mill power, and more satisfactorily to indemnify those whose lands might be injuriously affected by the overflow of the water. The revised statutes, on this subject, rather combined the then existing statutes, than introduced any new legislation. And while they modified some of the proceedings, and reduced the regulations respecting claims for flowing to a more complete system, they neither introduced any new principle, nor made any marked alteration in respect to the rights of mill owners and land owners. The objects of the statute are threefold :

To provide for the erection of mills and the raising of a head of water to work them; to secure the respective rights of the several owners of mills and mill power, on the same stream; and to furnish an indemnity to land owners, by other remedies than those given by the common law.

In regard to damages occasioned by the overflowing of lands, the statute looks solely to the protection of the rights of the land owner; and though extensive in its provisions as to the use of the water and the manner of compensation for the damages occasioned by such use, it does not reach beyond such mutual objects, nor extend to cases not within its purview or intent, although such cases may appear to be embraced within the letter of it. And in cases of damage occurring, which are not within the purview of the statute, the remedy at common law, for the injury sustained, is not taken away; and this remedy may be sought either by an action on the case, or by indictment, according to the nature of the injury complained of. The right to maintain an action on the case was decided in *Johnson* v. *Kittredge*, 17 Mass. 76, by the ruling upon the first plea in bar in that case, which was a complaint, under the statutes, for flowing land, and a prayer for a jury to ascertain and increase the damages beyond the amount formerly awarded and adjudged. The respondents pleaded in bar, that a warrant ought not to issue, because the injury, if any, which the complainant had sustained, had happened by their keeping up their dam, and flowing the water higher than the dam, at the time of the judgment, would permit, and that the remedy for the supposed injury should be by action at common law. To this plea the complainant demurred; and the court, in giving their opinion, say, " for this injury, it is said, the only remedy is by action at common law. No sufficient answer has been given to this objection, which seems to be founded on the true construction of the statute." This decision, it was said by the present defendants' counsel, being before the revised statutes were passed, is not conclusive, inasmuch as § 4 of *c.* 116 of those statutes has provided, that " any person," &c. But the court

have lately decided, in *Hill* v. *Sayles*, (*ante*, 142,) where a similar cause of damage was complained of, that an action on the case will lie, because the statute has made no provision for an injury thus sustained, and because it was not the intention of the framers of the statute to deprive an injured party of redress for an injury for which a remedy existed at common law, without providing another mode of relief. The statute operates upon every case within its provisions, and turns the party round to his remedy under it; but when a case arises that is not provided for, the common law still furnishes the appropriate mode of redress.

In cases where a prosecution in the name of the Commonwealth is the proper remedy for the injury committed, the court will sustain an indictment for the punishment and consequent removal of the nuisance. In *Commonwealth* v. *Stevens*, 10 Pick. 247, the court held, that the provisions of the statutes for the support and regulation of mills could not be so constructed as to justify or excuse the erection of a dam in such a manner as to overflow a public highway, and there render it impassable. The mischief, which the mill acts were intended to guard against, was the expense and vexation arising from a multitude of actions for damages, to be brought by private owners of lands. All the provisions of those acts show that such was the intent of the legislature. There being no provision for an indemnity to the public, it seems manifest that no encroachment on the public rights was intended to be sanctioned. And the same doctrine was maintained in *Commonwealth* v. *Fisher*, 6 Met. 433, where the learned counsel for the defendant did not contend that the revised statutes had made an alteration in the law as declared in *Commonwealth* v. *Stevens*.

The facts agreed upon in the present case are similar to those in the cases above cited, and would have sustained an indictment against the defendants for a nuisance in overflowing the road. The plaintiffs, however, did not apply to the grand jury to indict the defendants, but repaired the damages which they were, in the first instance, called upon to make

good; and the question now is, whether they can maintain this action on the case, or must resort, for redress, to the statute regulating mills.

It is argued, that § 4 of Rev. Sts. *c.* 116, will embrace the plaintiffs within its terms, and, consequently, that the statute must be resorted to. The words are, as we have already seen, " any person, whose land is overflowed, or otherwise injured," &c. It is said, that a person otherwise injured, means a person who was not the owner of the land; and that " persons," by Rev. Sts. *c.* 2, § 6, may include a corporation, or body politic, and that the words " otherwise injured " enlarge the remedy given by *c.* 116. But we are of opinion, that the same provision, in somewhat different language, was contained in *St.* 1824, *c.* 153, § 3, which has been already quoted. And in Rev. Sts. *c.* 116, § 4, provision is made for further injury than is caused by mere overflowing of land; but it is, we think, an injury to the person owning the land that is flowed, and not an injury to a person not an owner thereof, nor interested in it. The word " person " may, or may not, apply to a corporation. That depends on the fact, whether a corporation is the owner of the land injured.

The mill act is made to give privileges to mill owners, and to confine to the statute remedy the claims of land owners for injuries provided against. But further than that it does not extend the law. In the case at bar, the plaintiffs are not the owners of the land over which the road in question passes, nor are they, as a corporation, the owners of an easement. It is a public highway, in which every citizen has an easement, and no one to the exclusion of another. The town, in the distribution of the public burdens, is bound to maintain that portion of the highway which is within its territorial limits; but, in its corporate capacity, it neither owns the soil nor the easement. It has no private rights, which are protected by the statute, or are within its purview or intent. But the town has sustained a damage in being compelled to repair the defect caused in the road by the act of the defendants in erecting their dam, and raising their head of water, and

overflowing the road, without making proper provision for the road, by bridging it, or by raising it, and making convenient sluice-ways through it. They have received the benefit from raising the head of water; and by doing the damage complained of, at the expense of the plaintiffs, who were compelled by law to repair the road, they are, by force of the same law, liable to make good the damage which the plaintiffs have sustained by their act. And we are of opinion that this is an injury for which an action of the case will lie. It was a wrongful act of the defendants, and the plaintiffs have sustained a direct damage from it. The plaintiffs come within the well known principle, that for every wrong done to a person a remedy is provided. Bac. Ab. Actions in General, B. Whenever a nuisance is injurious to a private individual, the law affords him relief, though the nuisance is also a public one. *Shaw* v. *Cummiskey*, 7 Pick. 76. And we think the right to maintain the present action rests on similar principles with that of *Inhabitants of Lowell* v. *Boston & Lowell Rail Road*, 23 Pick. 24. There certain persons recovered damages against the town of Lowell for a defect which was caused in a highway by the rail road corporation in making their road; and the court decided, that the town might recover, in an action on the case, against the corporation, an indemnity; the parties not being *in pari delicto;* but not double damages, nor the costs of the action against the town.

We are of opinion that the present plaintiffs are entitled to recover the items of expense directly incurred by them in repairing the road. As the case finds that the bank wall, though beyond the line of the road, was necessary for securing the road from the like injury, by the constant action of the water upon the bank near the road, the expense incurred in building the wall is incidental to the repairs of the road, and may be considered a part of them.

The costs paid by the plaintiffs, on the indictments against them, are not recoverable; not being expenses incurred in repairing the road. They were incurred in consequence of the plaintiffs' neglect of duty; and for that the defendants are

not responsible. The indictments were not processes for the repairing of the road, but for the plaintiffs' neglect in not repairing it. The costs of the action against the plaintiffs in the case above mentioned, in 23 Pick. 24, were not allowed to be recovered in their suit against the rail road corporation.

Interest is to be computed from the time of the demand made on the defendants.